**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| **ZIONS FIRST NATIONAL BANK,** | ) | |
| | ) | |
| **Plaintiff,** | ) | |
| | ) | **No. 07-C-3760** |
| **v.** | ) | |
| | ) | **HONORABLE DAVID H. COAR** |
| **PAUL GREEN, SHERRELL GREEN, and DOROTHY LOADES,** | ) | |
| | ) | |
| **Defendants.** | ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff Zions First National Bank ("Zions" or "Plaintiff") brought this mortgage fraud action against Defendants Paul Green, Sherrell Green, and Dorothy Loades ("Loades") (collectively "Defendants"), incorporating common law claims of fraud, conspiracy, and negligent misrepresentation and pursuant to this Court's diversity jurisdiction. Now before this Court is Defendant Loades's motion to dismiss all counts against her (Docket No. 18). For the reasons stated below, the motion is DENIED in part and GRANTED in part.

## FACTS[1]

In December of 2004, Paul Green and Sherrell Green (collectively "the Greens"), along with Bobbie Green Campbell and his wife Eugene Campbell (collectively "the Campbells"), approached real estate agent Bruce Hackel ("Hackel") to purchase a property located at 23450 Western Avenue in Park Forest, Illinois ("the Property"). At the time, the property was owned

---

[1]These facts are largely derived from the Plaintiff's complaint and, for the purposes of this motion, are assumed to be true with all reasonable inferences made in favor of the Plaintiff. *Patel v. City of Chicago*, 383 F.3d 569, 572 (7th Cir. 2004).

by Bill Ricketts ("Ricketts"), and consisted of land and an office building listed for sale at $550,000. The actual value of the Property is, and at all times was, in the range of $320,000-425,000. Nonetheless, the Greens hoped to finance the purchase at a value of $1,100,000, with the excess funds to be refunded to a company by the name of Fresh Start, Inc – a company owned and/or operated by Green – ostensibly for the purpose of improving the property. Dorothy Loades was enlisted to appraise the property, and on February 27, 2005, she valued it at $1,125,000 ("Loades appraisal").

Based in some part on the Loades appraisal, Zions agreed to provide a $825,000 mortgage loan to the Campbells to finance their purchase of the property. On June 2, 2005, Ricketts transferred title to Property to the Campbells. The purported purchase price was $1.1 million, financed with an $825,000 mortgage loan from Zions to the Campbells. Line 1308 of the Settlement Statement dictated that $550,000 of the purchase amount would be paid to Fresh Start, Inc. as part of the transaction.

In June of 2006, the Campbells defaulted on their mortgage and Zions had a receiver appointed for the property. At that time Zions discovered that the Property was in a general state of disrepair. Little to none of the $550,000 earmarked for property improvements had been applied to that purpose. Following the entry of a foreclosure judgment, Zions had an appraisal performed on the Property as of March 8, 2007. That appraisal shows the liquidation value of the Property to be $320,000, and the fair market value of the Property to be $425,000. Zions is the current owner of the Property, having obtained title to the Property through the foreclosure process. Through the foreclosure, Zions obtained a $300,000 joint and several deficiency

judgment against the Campbells, but to date has not collected any amounts owed pursuant to that judgment.

On July 5, 2007, Plaintiff filed a complaint with this Court, alleging: common law fraud against the Greens and Loades (Count I); conspiracy against the Greens and Loades (Count II); and, in the alternative, negligent misrepresentation against Loades (Count III). For the reasons stated below, this Court finds that dismissal of some claims against this Defendant is appropriate.

## LEGAL STANDARD

On a motion to dismiss, the Court accepts all well-pleaded allegations in the plaintiff's complaint as true. Fed. R. Civ. Plaintiff. 12(b)(6). The purpose of a 12(b)(6) motion is to decide the adequacy of the complaint, not to determine the merits of the case. *Gibson v. City of Chicago*, 910 F.2d 1510, 1520 (7th Cir. 1990) (citation omitted). A complaint should not be dismissed "unless it appears beyond all doubt that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).

A complaint that complies with the Federal Rules of Civil Procedure cannot be dismissed because it fails to allege facts. The Rules require simply that the complaint state a claim; they do not require the complaint to plead facts that would establish the validity of that claim. *Higgs v. Carver*, 286 F.3d 437, 439 (7th Cir. 2002). "All that need be specified are the bare minimum facts necessary to put the defendant on notice of the claim so that he can file an answer." *Id.* (citing *Beanstalk Group, Inc. v. AM General Corp.*, 283 F.3d 856, 863 (7th Cir. 2002)). The Seventh Circuit has held that stating a claim in a complaint in federal court requires only "a short statement, in plain (that is, non-legalistic) English, of the legal claim." *Kirksey v. R.J. Reynolds*

*Tobacco Co.*, 168 F.3d 1039, 1041 (7th Cir. 1999).  Plaintiffs "don't have to file long complaints, don't have to plead facts, don't have to plead legal theories."  *Id.*

That said, allegations of fraud are subject to the heightened pleading standard of Federal Rule of Civil Procedure 9(b).  *See, e.g., Goren v. New Vision Intl.*, 156 F.3d 721, 726 (7th Cir. 1998).  Under Rule 9(b), a plaintiff must plead "all averments of fraud ... with particularity." Fed. R. Civ. P. 9(b).  This amounts to requiring that plaintiff plead the "who, what, when and where of the fraud."  *United States ex rel. Garst v. Lockheed-Martin Corp.*, 328 F.3d 374, 376 (7th Cir. 2003); *see also Tricontinental Indus., Ltd. v.* , 475 F.3d 824 (7th Cir. 2007.) ("To satisfy this requirement, Tricontinental must plead the "who, what, when, where, *and how*" involved in the alleged fraud.") (citing *DiLeo v. Ernst & Young*, 901 F.2d 624, 627 (7th Cir.1990) (emphasis added).   In other words, a plaintiff must provide the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Jepson, Inc. v. Makita Corp.*, 34 F.3d 1321, 1327 (7th Cir. 1994) (quoting *Uni\*Quality, Inc. v. Infotronx, Inc.*, 974 F.2d 918, 924 (7th Cir. 1992)).  Rule 9(b)'s particularity requirement may be relaxed "when the details are within the defendant's exclusive knowledge." *Id.* at 1328.

Fraudulent conspiracy claims are also subject to the heightened pleading standard of Fed.R.Civ.P. 9(b).  *Wolf v. City of Chicago Heights*, 828 F.Supp. 520, 524 (N.D. Ill. 1993); *see also Borsellino v. Goldman Sachs Group, Inc.*, 477 F.3d 502 (7th Cir. 2007) ("A claim that 'sounds in fraud' – in other words, one that is premised upon a course of fraudulent conduct – can implicate Rule 9(b)'s heightened pleading requirements.").

**ANALYSIS**

With respect to the claims of common law fraud and conspiracy to commit that fraud, Defendant Loades generally claims that Plaintiff has not stated its case with particularity. As both parties acknowledge, Rule 9(b) requires that a plaintiff set forth the who, what, where, when, and how of the allegedly fraudulent conduct so that the defendant can adequately form a response to the fraud allegation. Defendant also maintains that the Complaint does not state a case for negligent misrepresentation as the appraisal is only treated as an opinion under relevant law.

a.      Count I: Fraud

From the language of the Complaint it is apparent that Plaintiff is accusing Loades of falsely inflating her appraisal of the Property at 23450 Western Avenue for the sake of benefitting the Greens and/or the Campbells. In the alternative, should a meeting of the minds or ultimate intent to deceive be lacking, Plaintiff pleads a theory of negligence according to which Loades grossly overestimated the Property's value. The language of the complaint makes clear all of the necessary elements of a particularized claim of fraud: The "who" is Defendant Loades herself; the "what" is a fraudulent appraisal of the property that ostensibly doubled its value; the "where" can be inferred as the site of the Property in question and the offices of Loades; the "when" is the date of the appraisal, or February 27, of 2005; and the "how" refers to the transmission of a knowingly inflated value. Plaintiff has therefore made clear the "identity of the person who made the misrepresentation, the time, place and content of the misrepresentation, and the method by which the misrepresentation was communicated to the plaintiff." *Jepson,* 34 F.3d at 1327.

Defendant's various claims to the contrary are unavailing, as they focus on relatively minor matters. She alleges that "[t]here is no indication of how this alleged transmittal occurred and nowhere does plaintiff allege facts indicate [sic] that Loades transmitted the appraisal to plaintiff directly or that it was one of the 'potential lenders' who received the appraisal." Dismiss Mem. at 4. However, the manner in which the appraisal was transmitted – whether by fax or mail or email – is hardly a "key step" in Plaintiff's allegations; to expect Plaintiff to know such an unimportant detail without the benefit of an answer to its complaint or any discovery would be unreasonable. *See Jepson*, 34 F.3d at 1328. Similarly, the "when" factor is sufficiently clear for present purposes; it is reasonably apparent that the fraudulent statement of the appraisal was made on February 27, 2005, and the lack of a date for its transmission is not troubling.

Loades states that Plaintiff fails to allege "that Dorothy Loades actually made a false statement of fact or any form of misrepresentation to Zions First National Bank." Dismiss Mem. at 3. This argument appears to draw on the fact that the attached appraisal is made out to "Challenge Mortgage," rather than Zions, and the fact that her signature is absent from the form. Def. Dismiss Mem. at 1, fn. 1. However, it is clear from the record that whichever bank received the appraisal first, Plaintiff argues that Loades should have expected her appraisal to be used by a third party for a financial purpose in which her trustworthiness and accuracy would be at issue. *See* Compl. ¶ 45 ("Dorothy Loades supplied the Loades Appraisal intending to induce other parties, including the Campbells, to act."). Liability for the accuracy of financial statements can extend beyond parties in direct privity, so long as the reliance of the other parties was foreseeable. Therefore whether or not Loades directly communicated with Zions in this transaction, or knew that Zions itself would ultimately be the lender, the issue is likely irrelevant

so long as Plaintiff can show that the eventuality was foreseeable. *See, e.g., Impex Shrimp & Fish Co. v. Aetna Cas. and Sur. Co.*, 686 F.Supp. 183 (N.D. Ill. 1985) ("Under Illinois principles of common law fraud, a plaintiff need not demonstrate privity with the defendant; he need only prove that the defendant intended him to rely on the defendant's fraudulent statement, or that the defendant had a special reason to expect the plaintiff to rely on his statement.") (collecting cases). The lack of a signature on the appraisal is also not compelling as a grounds for dismissal, as the Plaintiff might still prove that it was transmitted in that form by Loades.

In any event, these are issues to be taken up at a later stage. For present purposes it is sufficient that Plaintiff claims that Loades had a duty to be accurate, that she deliberately failed to do so, and that her failure was relied upon by Zions after it was received. Whether or not Loades owed any such duty, and whether she owed that duty to Zions, is to be determined in light of a more complete record.

Defendant's other argument, that the actions of the parties are inappropriately "lumped together," is readily disregarded; it is unclear what confusion on the part of the Defendants can come from the idea that Loades manipulated her appraisal for the others' benefit – appraisal as a skill was unique to this Defendant, and was one which was allegedly necessary to further the fraudulent scheme. Her unique role in furthering the alleged malfeasance is sufficiently clear.

For these reasons, Defendant Loades's arguments with respect to the fraud claim are unavailing. Her motion to dismiss is DENIED with respect to Count I.

b.      Count II: Conspiracy

Defendant Loades also maintains that the claim of conspiracy in Count II should be dismissed, as it is subsumed by the claim for common law fraud in Count I and is otherwise not

stated with particularity. In response, Plaintiff concedes that the two claims cannot be brought together, but nonetheless maintains that these two claims are presented in the alternative.

Whether or not these are alternative claims, they both must nonetheless follow the dictates of Rule 9(b). *See Wolf*, 828 F.Supp. at 524. To the extent that the second count alleges a conspiracy beyond the claim of falsifying the appraisal, it is unclear what fraudulent activities might support such a claim should Loades be found blameless under the first count. In its response, Plaintiff states in rather vague terms that "[e]ven if it was Green, as opposed to Loades, who committed the underlying act of fraud, that fraud could not have been consummated without a loan from Plaintiff, which was only made possible by virtue of the Loades appraisal." However, Plaintiff has provided no allegations of communications or plans for the conspiracy that might satisfy the particularity requirement should falsification of the appraisal fail as a claim. Based on the complaint, the only wrongful action against which Defendant Loades can reasonably prepare a defense involves the improper appraisal; any theory beyond that is vague and/or conclusory.

Defendant Loades's motion to dismiss is GRANTED with respect to Count II.

c.      Count III: Negligent Misrepresentation

Loades also maintains that Plaintiff's claim of negligent misrepresentation, brought against her alone, should be dismissed because Illinois treats appraisals as mere opinions that cannot be considered actionable misrepresentation. However, the only case cited for this proposition, *Sampen v. Dabrowski*, 222 Ill.App.3d 918, 584 N.E.2d 493 (Ill. App. 1 Dist. 1991), does not support this allegation of a categorical rule. *Sampen* dealt with consumer fraud and breach of contract claims and, to the extent that it discussed the opinion-like nature of an

appraisal, it suggests that the issue is dependent on the facts at hand. *See id.* at 495-96. In addition, the case cited by Plaintiff shows that it is at least possible that a mistaken appraisal might be actionable under a negligent misrepresentation theory. *See generally Duhl v. Nash Realty Inc.*, 102 Ill.App.3d 483, 490, 429 N.E.2d 1267, 1273 (Ill. App. 1981) ("[A]ccepting plaintiffs' allegations as true, it follows that the defendants' [estimate of value] in this case could be found to have been meant by the parties to be understood as statements of fact to be relied upon rather than as expressions of mere opinion to be accepted solely as such."). In any event, it would be premature at this stage to find that Loades's appraisal was not a negligent statement of fact rather than opinion, and it therefore cannot be said "that the plaintiff can prove no set of facts in support of his claim which would entitle him to relief." *Conley*, 355 U.S. at 45-46.

Defendant Loades's motion to dismiss is DENIED with respect to Count III.

## CONCLUSION

For the reasons stated above, Defendant Loades's motion to dismiss is DENIED in part and GRANTED in part.

Enter:

/s/ David H. Coar

_____

David H. Coar
United States District Judge

Dated: **November 16, 2007**